UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JAMES EDGAR ZERBI,                                    Case No. DK 09-14649
                                                      Hon. Scott W. Dales

              Debtor.

_____/

**OPINION AND ORDER REGARDING
OBJECTION TO EXEMPTION UNDER 11 U.S.C. § 522(d)(7)**

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

INTRODUCTION

Chapter 7 Debtor James Edward Zerbi (the "Debtor") claimed a life insurance policy as exempt under 11 U.S.C. § 522(d)(5), (d)(7) and (d)(8). The Chapter 7 Trustee Marcia Meoli (the "Trustee") concedes the propriety of the Debtor's exemption claims under § 522(d)(5) and (d)(8), but filed an objection (the "Objection," DN 29) with respect to his exemption under § 522(d)(7). The parties agreed that the court could decide the exemption controversy without conducting an evidentiary hearing, and thereafter the Trustee filed a motion for summary judgment pursuant to Civil Rule 56, made applicable to this contested matter by Bankruptcy Rule 9014(c) (the "Motion," DN 42). The Debtor filed his response (the "Response," DN 48).

JURISDICTION

The court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(a). This contested matter is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B) because it involves the Debtor's exemption claim.

<u>ANALYSIS</u>

This contested matter is ripe for summary judgment because there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56.  Rather, the dispute requires the court to decide the scope of two of the Bankruptcy Code's three life-insurance-related exemptions, 11 U.S.C. § 522(d)(7) and (d)(8).[1]

The parties agree that the Debtor was the owner and the insured under a life insurance contract issued by Phoenix Life Insurance Company (the "Policy") that, at one time, included an investment or "cash value" component as well as the usual insurance component.  Because the Debtor failed to pay the insurance premiums in 2007, the Policy "lapsed" according to its terms, which meant that the insurance company used the cash value portion of the Policy to fund the Debtor's term insurance.  The parties also agree that the Policy has a cash surrender value of approximately $19,248.02 as of the petition date (the "Cash Value"), meaning the Debtor would have to surrender the Policy, thereby terminating his life insurance coverage, in order to obtain the Cash Value.[2]

Both parties agree that the Policy is an "unmatured life insurance contract owned by the debtor" and it is not a "credit life insurance contract."  Accordingly, the Debtor is clearly entitled to exempt the Policy under 11 U.S.C. § 522(d)(7).  The scope or effect of that exemption, however, remains at issue.

The Debtor believes he may no longer be insurable, and at present cannot afford coverage comparable to existing protection under the Policy. He contends that Congress intended to protect debtors under these circumstances by enacting § 522(d)(7). If the Trustee is permitted to

---

[1] Because the Debtor is still alive, the Policy is "unmatured" and the Debtor has not claimed an exemption under the third life-insurance-related exemption, 11 U.S.C. § 522(d)(11)(C).

[2] From the court's review of the Policy and the parties' submissions, it appears the Debtor is not permitted to borrow under the Policy.

realize the Cash Value of his Policy by compelling him to surrender it, he argues that will lose the benefit of the exemption afforded him under § 522(d)(7), and that he has properly claimed. He relies on a number of cases including *In Re Oxford*, 274 B.R. 887 (Bankr. D. Idaho 2002), a case that supports his position.  His argument, though superficially appealing, nevertheless misses the mark because Congress addressed different aspects of unmatured life insurance policies in 11 U.S.C. § 522(d)(7) and (d)(8), and the court must give meaning and effect to both subsections.

Because the text of 11 U.S.C. § 522(d)(7) is ambiguous when read in context with § 522(d)(8), courts have consulted the statute's legislative history, which includes the following instructive observation:

> Paragraph (7) exempts a life insurance contract, other than a credit life insurance contract, owned by the debtor.  This paragraph refers to the life insurance contract itself.  It does not encompass any other rights under the contract, such as the right to borrow out the loan value.

H.R.Rep. No. 95-595, at 361 (1977); *see also In re Waggoner*, 244 B.R. 492 (Bankr. M.D. Ga. 2000).  In many cases involving simple term life insurance, the insurance contract would be included within the estate under the broad reach of 11 U.S.C. § 541(a)(1), but the estate would have no meaningful economic interest in the unmatured policy.  As a result, Congress gave debtors the option to exempt the unmatured insurance policy itself under 11 U.S.C. § 522(d)(7). Debtors who claim the exemption under § 522(d)(7) may continue to enjoy the insurance protection, and may designate or change beneficiaries under exempt policies.  Congress, however, recognized that some insurance policies have a savings or investment aspect, and decided that debtors may only exempt a specified portion of these other benefits under § 522(d)(8).

After reviewing *Steiner*, *Oxford*, *Waggoner* and other authorities, the court concludes that Congress drew a distinction between the insurance contract itself -- which the Debtor may exempt "in-kind" without any limitation based on the debtor's aggregate interest or value -- and the other benefits under an unmatured insurance contract, which the debtor may exempt up to specified values. Cash value, borrowing rights, or dividends payable under an unmatured life insurance policy are examples of other benefits. Many policies, including the Debtor's Policy, have a dual aspect involving both insurance and investment benefits. Congress addressed this duality by bifurcating the treatment of each aspect of an insurance policy, dealing with insurance under (d)(7), and investment under (d)(8).

To fully appreciate the interplay of § 522(d)(7) and (d)(8) requires some historical context, which Judge Pappas recently provided in a case that required him to interpret Idaho's nearly identical state exemption provisions:

> The rationale for § 522(d)(7) was carried over from the Bankruptcy Act . . . . In order to exempt a policy under the Act, however, a debtor had to first pay the cash surrender value of the policy to the trustee . . . . Such a scheme, which allowed a debtor to retain his life insurance policy, necessarily only required the payment of cash surrender "value," and not the actual cash received in exchange for a surrender of the policy. If surrender were required, there would be no policy for the debtor to retain.
>
> With the introduction of the Code, and adoption of § 522(d)(8), Congress indicated that it intended to allow debtors to continue to exempt life insurance policies, and, in addition, created a new exemption in the cash surrender value that had traditionally been turned over to a trustee as a condition of policy retention . . . . While § 522(d)(7) "does not encompass any other rights under the contract," § 522(d)(8) allows for exemption of dividends or interests accrued under a contract . . . . It is through § 522(d)(8) that Congress has allowed for exemption of dividends and interests such as cash surrender value.
>
> In other words, all that is exempted by § 522(d)(7) . . . is the life insurance policy itself, and not a debtor's rights under the policy . . . . If a debtor wishes to protect dividends or interests that have accrued under a policy, such as a policy's cash surrender value, he or she must claim exemption in that interest under § 522(d)(8).

*In re Steiner,* 2010 WL 4687955, 3-4 (Bankr. D. Idaho 2010) (citations omitted).  This historical context undercuts the Debtor's reliance on *In Re Oxford*, 274 B.R. 887 (Bankr. D. Idaho 2002), as Judge Pappas noted in *Steiner*.  The court finds *Steiner* more persuasive than *Oxford*.

The Trustee's interpretation, amply supported by case law, is more compelling than the Debtor's interpretation because the former, unlike the latter, does not render § 522(d)(8) meaningless.  Because both subsections address unmatured life insurance contracts, the Debtor's interpretation would render § 522(d)(8) superfluous.  Debtors would simply protect the investment aspect of their policies by claiming the exemption under § 522(d)(7), leaving § 522(d)(8) without force or effect.  The interpretation is at odds with well-established canons of statutory interpretation, and inconsistent with practice under the Bankruptcy Act that Congress evidently intended to continue under the Bankruptcy Code.  *See Rake v. Wade*, 508 U.S. 464, 471-72 (1993) ("We generally avoid construing one provision in a statute so as to suspend or supersede another provision"); *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate'"); *Steiner, supra.*

## CONCLUSION

Accordingly, although the court will permit the Debtor to exempt the Policy under §522(d)(7), the exemption will not prevent the Trustee from taking steps to require the Debtor to account for, and turnover to the estate, the portion of the Cash Value that exceeds the exemptions properly claimed under § 522(d)(5) and (d)(8), which the court calculates as $ 6,524.91.[3]  If the Debtor is able to account for this non-exempt portion of the Cash Value, he need not surrender

---

[3]

| Cash Value | $19,248.02 |
|---|---|
| Less § 522(d)(5) | ($1,948.11) |
| Less § 522(d)(8) | ($10,775.00) |
| Over-Exemption | $6,524.91 |

the Policy, and may retain his insurance coverage; if, however, he cannot satisfy the Trustee's claim to the Cash Value without surrendering the Policy, the court, on motion, will require surrender. This was the practice under the Bankruptcy Act, and Congress did not intend to depart from that practice by enacting § 522(d)(7), except as expressly set forth in § 522(d)(8).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Motion for Summary Judgment is GRANTED and her Objection is SUSTAINED.

IT IS FURTHER ORDERED that the Debtor's exemption under 11 U.S.C. § 522(d)(7) does not protect the Cash Value of the Policy.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon James E. Zerbi and Marcia Meoli, Esq.

END OF ORDER

**IT IS SO ORDERED.**        Scott W. Dales
United States Bankruptcy Judge    **Dated: January 06, 2011**